STATE v. ANDERSON et al.

No. 4096.   Decided July 3, 1924.   (227 Pac. 810.)

1. HUSBAND AND WIFE—NO PRESUMPTION OF HUSBAND'S GUILT OF OFFENSE COMMITTED BY WIFE. That wife wrote and mailed a threatening letter *held* to raise no presumption that husband was also guilty.

2. THREATS—LETTER HELD NOT TO SUPPORT CHARGE. Letter written by a married woman to a man asking that he make a settlement for a certain "tragedy" in order to avoid scandal and trouble *held* not to support charge of making threats to accuse him of crime, etc., for the purpose of extorting money.

Appeal from District Court, Seventh District, Sanpete County; *Dilworth Woolley*, Judge.

Willard Anderson, Stella Anderson, and Ren Rasmussen were convicted of an offense, and the first two defendants appeal.

REVERSED, and new trial granted.

*Lewis Larson*, of Manti, for appellants.

*Harvey H. Cluff*, Atty. Gen., and *W. Hal. Farr*, Asst. Atty. Gen., for the State.

WEBER, C. J.

The three defendants were convicted of what in common parlance is known as blackmail. The defendant Rasmussen was granted a new trial, and Willard and Stella Anderson, who appeal, were sentenced to the state prison.

The facts shown by the record are: Joseph Colby, the complaining witness, and Ren Rasmussen, on February 26, 1923, left Colby's home at Salina, Utah, for Richfield, Utah, in an automobile, having a supply of whisky. Arriving at Richfield more whisky was secured by the parties from different bootleggers at Richfield, both Rasmussen and Colby imbibing freely. While they were standing at a street corner, Stella Anderson, one of the respondents, came along and was introduced by Rasmussen to Colby. The bottle of moonshine was produced, and Mrs. Anderson took a drink. Later, some time after 9 in the evening, the three met again. Another bottle was produced, each taking a drink. About that time Colby became helplessly intoxicated, and knew nothing of further proceedings until he was in Mrs. Anderson's house and heard Anderson's voice demanding money, Mrs. Anderson screaming, "Willard; oh Willard!" At that time, according to Colby's testimony, Anderson was pointing a "gun" at him, and demanding money. Thereafter Anderson said to Colby: "You cannot leave this house until you dig up and pay me some money." Finally the defendant Anderson put Colby to bed and took his trousers away from him. Colby went to sleep and remained in bed till early the next morning, when Anderson came into the room, woke him up, and repeated the demand for money. Anderson then left, and Mrs. Anderson came into the room, threw his trousers to Colby, and told him to get out, which he did.

The foregoing is the substance of all the evidence against Anderson. His wife wrote Colby an alleged threatening letter which will be referred to hereinafter, but the evidence

does not in any manner either directly or indirectly connect the husband with anything in connection with the letter. Unless he in some way acted in conjunction with his wife, in some way aided or abetted her in making written threats, the evidence does not support the verdict of guilty of a felony—of sending to Colby a threatening letter with intent to extort money from him.

It surely cannot be said that the fact that his wife wrote and mailed the letter furnishes a presumption that Anderson was also guilty. On no other theory can the conviction of Anderson be upheld.

Now, as to the charge against Mrs. Anderson: On February 28, 1923, she wrote and mailed to Colby the following letter:

"You remember the tragedy that happened the other night, there has got to be something done. I don't want to cause any trouble for your family, and I won't if you will come and make things right. My husband has left me and my family is busted up. I am turned in the street. If you will come up here and compromise there won't be no need of causing trouble for your family. If you don't come and help me my husband said he would put it in Lawyer King hands and you know what a scandal it would be. I can't afford to disgrace my old parents and the rest of my people. And you can't afford to disgrace yours either. But for Lord sake don't let that happen for he will surely do it, if you don't make things right. You know what a serious charge it is and there are a few articles left here, that is such strong evidence against you. So you can see where you are at. Now don't put this off, get up here at once because I am warning you so as not to cause any more trouble or scandal. You know who I am."

After stating what is alleged to have occurred before any letter was written, it is charged in the information:

. "* * * And that the said defendants at the time and place aforesaid, for the purpose of extorting and obtaining from him, the said Joseph Colby, the aforesaid large sum of money, and in continuance of the aforesaid threats, did send and deliver to him, the said Joseph Colby, willfully, feloniously and maliciously, a letter and writing which was adapted and intended and which expressed and implied a threat that the defendants would do an unlawful injury to the person of him, the said Joseph Colby, by then and there striking and beating and shooting and taking the life of him, the said Joseph Colby, and that the defendants would then

and there accuse the said Joseph Colby of the commission of a crime, to wit, the crime of having sexual intercourse with the defendant Stella Anderson, who was then a female person and the wife of the defendant Willard Anderson, and to impute to him, the said Joseph Colby, a disgrace, to wit, the disgrace of having had unlawful and illicit associations and sexual intercourse with her, the said Stella Anderson, and to expose a secret affecting the said Joseph Colby, to wit, an alleged and pretended secret between him and the said defendants, and that he has associated with the said Stella Anderson in a lewd and lascivious manner, and that he had sexual intercourse with her, and that he had indulged in drinking intoxicating liquors with the said defendants, including the said Stella Anderson, and that he had become intoxicated, all of which threats so made, and the letter so sent and delivered to him, the said Joseph Colby, were adapted and intended to induce fear in the mind of him, the said Joseph Colby, contrary to the form of the statutes in such case made and provided, and against the peace and dignity of the state of Utah."

It will be seen that nothing is pleaded in the information that is given support by the letter introduced in evidence. One of the material allegations of the complaint, as the court instructed the jury, was that the letter expressed or implied or was adapted to imply any threat alleged in the information. We are unable to find any threat in the information that is supported by any statement in the letter. The information details one state of facts, the letter another. It is more than a mere variance between information and proof— it amounts to an entire failure of proof. Under these circumstances we think the judgment should be reversed, and defendants granted a new trial.

Such is the order.

GIDEON, THURMAN, CHERRY, and FRICK, JJ., concur.